S03A0414. BROWN v. THE STATE.
(581 SE2d 35)

FLETCHER, Chief Justice.

This appeal requires us to consider whether OCGA § 16-13-30.2 punishes as a misdemeanor the same conduct that resulted in Kandy Brown's felony conviction under OCGA § 16-13-30.1 for selling fake crack cocaine, and, if so, whether Brown should have been convicted of the misdemeanor instead of the felony. Because the two statutes provide different penalties for the same conduct, the rule of lenity requires that Brown be subjected to the lesser of the two penalties – in this case, the misdemeanor penalties of OCGA § 16-13-30.2. Accordingly, we reverse her felony conviction under OCGA § 16-13-30.1 (a) (1) (A).

On April 30, 2001, as part of a police-controlled buy of illegal drugs, a police informant went to an area known for illegal drug sales and asked Brown for a "twenty," which is slang for a twenty-dollar rock of crack cocaine. Brown handed him a small rock that, according to the informant, "looked like crack." The informant negotiated the price down to ten dollars, paid Brown, and took the rock to the police.

The State initially charged Brown with selling crack cocaine. However, after determining that the rock was not cocaine, the State indicted Brown for the felony of selling a noncontrolled substance that she implicitly represented to be a controlled substance, in violation of OCGA § 16-13-30.1 (a) (1) (A). Brown waived her right to a jury trial, and the trial court found her guilty.

1. On appeal, Brown contends that her felony conviction under OCGA § 16-13-30.1 (a) (1) (A) is unconstitutional because her conduct also violated OCGA § 16-13-30.2, which makes it a misdemeanor to possess or distribute an "imitation controlled substance," and the State improperly prosecuted her for violating the statute with the greater penalty rather than the one with the lesser penalty. OCGA § 16-13-30.1 (a) (1) (A) ("section 30.1") makes it a felony for any "person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon . . . [t]he express or implied representation that the substance is a narcotic or nonnarcotic controlled substance."[1] OCGA § 16-13-30.2 ("section 30.2") makes it a high and aggravated misdemeanor to "knowingly manufacture[ ], distribute[ ], or possess[ ] with intent to distribute an imitation controlled substance."[2] Although we previously have held that section 30.2 was not a lesser included offense of section 30.1, we recognized that, under some circumstances, the same evidence could be used to prove both crimes.[3] We examine now whether those circumstances exist in this case.

(a) Both statutes prohibit the *sale* of fake illegal drugs. Although section 30.2 does not expressly list "sale" as a prohibited activity, the Court of Appeals of Georgia has held that this statute's prohibition against the distribution of imitation drugs includes the sale of imitation drugs: "a sale is a distribution by definition, although a distribution may or may not be a sale."[4] Furthermore, the State has prosecuted the sale of cocaine under both statutes, and the court of appeals has upheld convictions for the sale of cocaine under both statutes.[5] We agree with the court of appeals that one of the ways a person can "distribute," as that word is used in section 30.2, is by selling the fake controlled substance.[6]

(b) Our analysis, therefore, focuses on whether, in this case, the

---

[1] OCGA § 16-13-30.1 (a) (1) (A).

[2] OCGA § 16-13-30.2 (a).

[3] *State v. Burgess*, 263 Ga. 143, 145-146, n. 6 (429 SE2d 252) (1993).

[4] *Dorsey v. State*, 212 Ga. App. 479, 480 (441 SE2d 891) (1994).

[5] Compare *Dorsey*, 212 Ga. App. at 479-480 (misdemeanor for selling fake crack cocaine) with *Billups v. State*, 206 Ga. App. 91, 91-92 (424 SE2d 355) (1992) (felony for selling fake rock cocaine).

[6] Both statutes also include fake crack cocaine within their scope. See OCGA § 16-13-26 (1) (D) (cocaine is a schedule II controlled substance).

same evidence constituted both an "express or implied representation that the substance is a narcotic or nonnarcotic controlled substance," under section 30.1, and "an imitation controlled substance," under section 30.2. We conclude that it does.

Under section 30.1, the State may prove an implied misrepresentation by showing that the defendant sold a noncontrolled substance for "substantially in excess" of its reasonable value and "the physical appearance of the finished product containing the substance is substantially identical to a specific controlled substance."[7] At trial, the police informant testified that, in response to his request for crack cocaine, Brown gave him a substance that looked like ten dollars worth of crack cocaine. A police detective testified that, based on his extensive experience, the size, color, texture, shape, and overall appearance of the substance Brown sold was consistent with crack cocaine. The substance was not cocaine, however, and a reasonable trier of fact could infer that ten dollars was substantially more than the substance was worth.

Turning to section 30.2, "imitation controlled substance" is defined as, among other things, a product that "by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of one or more of the controlled substances."[8] Here, Brown represented that the substance she was handing over was crack cocaine, which appeared to be a ten dollar dosage unit of crack cocaine, based on the substance's color, shape, size, texture, and overall appearance.[9]

Using the same evidence, a reasonable trier of fact could have found beyond a reasonable doubt that Brown's conduct violated either section 30.1 (felony) or section 30.2 (misdemeanor). Having determined that the conduct for which Brown was indicted and convicted would have supported either a felony or misdemeanor conviction, we next examine the consequences of this overlap.

2. "Where any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of the two penal-

---

[7] OCGA § 16-13-30.1 (b).

[8] OCGA § 16-13-21 (12.1) (B). Subsection (A) defines "imitation controlled substance" as "[a] product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearance[ ]."

[9] The term "dosage unit" has been used by the Georgia appellate courts to describe a certain quantity of crack cocaine. See *Woods v. State*, 224 Ga. App. 52, 55 (479 SE2d 414) (1997) (defendant had "multiple dosage units of crack cocaine in his possession"); *Baker v. State*, 206 Ga. App. 18, 18 (424 SE2d 324) (1992) (" 'one dosage unit of crack cocaine' ").

ties administered."[10] This principle is frequently referred to as the rule of lenity,[11] which the United States Supreme Court has described as a "junior version of the vagueness doctrine" – the doctrine that bars enforcement of criminal statutes that are too vague for people of common intelligence to understand.[12] Because the same conduct constituted both a felony and a misdemeanor, the rule of lenity requires that Brown be subjected to the penalties for the misdemeanor, rather than the felony. Accordingly, we reverse Brown's felony conviction.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 19, 2003.

*Christopher G. Paul*, for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.

---

[10] *Gee v. State*, 225 Ga. 669, 676-677 (171 SE2d 291) (1969) (citation and punctuation omitted); see also *Chandler v. State*, 257 Ga. 775, 776 (364 SE2d 273) (1988).

[11] See, e.g., *McClellan v. State*, 274 Ga. 819, 820 (561 SE2d 82) (2002).

[12] *United States v. Lanier*, 520 U. S. 259, 266 (117 SC 1219, 137 LE2d 432) (1997); see also *Payne v. State*, 275 Ga. 181, 182-183 (563 SE2d 844) (2002) (A statute is void for vagueness when "persons of common intelligence must necessarily guess at its meaning and differ as to its application." (citation and punctuation omitted)).